[Crim. No. 1910. In Bank.—April 16, 1915.]

In the Matter of the Application of RALPH M. RICHARD-
SON for a Writ of Habeas Corpus.

Municipal Corporation—License-tax on Use of Slot Machines—
Tax for Revenue Purposes—Police Power of Regulation.—
A municipal ordinance, providing that every person, firm, or cor-
poration, owning or having control of any machine from which, on
deposit of a piece of money, within the machine, articles of mer-
chandise (except raisins) are ejected or delivered, shall pay a
license of two dollars per annum for each machine so used, and
that machines delivering raisins shall pay a license of one dollar
per annum; that every license thereunder shall be issued only to the
licensee for said machine at a particular place of business or loca-
tion, and shall not be valid at any other place except by transfer
thereto upon the written authorization of the tax-collector, and that
every machine so licensed shall have conspicuously attached to it
a metallic tag, to be furnished by the tax-collector, numbered con-
secutively from the date of issue and showing the time for which
issued, cannot be construed or sustained as an enactment in the
exercise of the police power of regulation, and it must be held
that the license-tax so attempted to be imposed is imposed solely
for the purpose of raising revenue.

Id.—Tax on Mode of Doing Business—Discriminatory Ordinance.—
The license-tax so attempted to be imposed is one solely on the
licensee's mode of making his sales and deliveries, without any
reference whatever to the amount of business done, and, in view
of the fact that no tax is imposed on persons who make sales of
similar articles in a different manner, is discriminatory and void
against the vendor who uses such a machine in making sales and
deliveries.

Id.—License-tax for Revenue Purposes—Equality and Uniform-
ity Essential—Unreasonable Classification.—There must be
equality and uniformity in the imposition of license-taxes for
revenue purposes, and any classification providing different charges
for those engaged in the same business, a charge for some and
exemption for the others, must be one founded upon natural and
reasonable distinction pertinent to the matter.

Id.—Classification Based on Method of Doing Business Unauthor-
ized.—The law does not warrant the imposition of a revenue tax
on some of those engaged in a certain business solely because of
the method they use in making their sales and deliveries, and the
exemption of all engaged in the very same business who do not

use that method, provided the method does not involve any occupancy or use of public property, such, for instance, as the use by wagons of a public highway.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

B. B. Blake, Willard P. Smith, and Fred J. Goble, *Amicus Curiae*, for Petitioner.

A. L. O'Grady, and Jno. Floyd, for Respondent.

ANGELLOTTI, C. J.—The petitioner was convicted in the police court of the city and county of San Francisco of a violation of the provisions of section 2 of ordinance No. 765, as amended by ordinance Nos. 1471 and 1537 (N. S.) of said city and county, and adjudged to pay a fine of five dollars, and in default of payment of such fine to be imprisoned for one day. Having refused to pay such fine he was taken into custody, and on his petition a writ of *habeas corpus* was issued to determine the question of the legality of his imprisonment.

The charge against petitioner was that he operated, owned, and controlled a certain machine, to wit: a match machine, with a nickel-in-the-slot attachment, at No. 230 Market Street, without first having procured a license therefor from the tax-collector of the city and county, as required by said ordinance. The complaint sufficiently states an offense under the provisions of section 2 of the ordinance, and the only question presented by this proceeding is as to the validity of said section.

The ordinance is one entitled "Imposing a license on nickel-in-the-slot machines." By section 1, a license fee or tax of two dollars per annum is required of every person, etc., owning or having control of any machine, in or on which, on deposit of a piece of money, within said machine, any service is rendered by means of such machine, such, for example, as the playing of music, the registering of one's weight, etc., for each machine so used. Sections 2 and 3 of said ordinance are as follows:

"Section 2. Every person, firm or corporation owning or having control of any candy machine, chocolate machine, postage stamp machine, or any other machine or apparatus of any kind, character or description from which, on deposit of a five cent piece, or any other piece of money, or any article representing money, within said machine, candy, chocolate, postage stamps, or other articles of merchandise (except raisins) are ejected or delivered, shall pay a license of $2.00 per annum for each machine so used; provided that machines delivering raisins shall pay a license of $1.00 per annum, except that for single action slot machines when attached to chairs or railings of theaters or other places of amusement, delivering but one package without refilling, every such person, firm or corporation shall pay at the rate of $8.00 per annum per one hundred machines so used, or eight cents per annum for each machine so used. Amended by Ordinance No. 227 (N. S.) approved June 11, 1907.

"Section 3. Every license hereunder shall be issued only to the licensee for said machine or apparatus at a particular place of business or location, and shall not be valid at any other place of business or location except by transfer thereto upon the written authorization of the tax-collector. Every machine or apparatus so licensed must have conspicuously attached to it a metallic tag, to be furnished by the tax-collector, numbered consecutively from the date of issue and showing the time for which issued."

Section 4 exempts such machines used in connection with any telephonic instrument operated by a telephone company, and section 5 provides that a violation of any provision of the ordinance shall be a misdemeanor, punishable in a prescribed way.

The ordinance is utterly devoid of anything indicating that it was enacted in the attempted exercise of the police power of regulation, except in so far as the mere imposition of a license-tax may indicate such a purpose. It simply provides that a specified license-tax for each machine shall be paid, that the license shall be valid only for the use of the machine at a particular place of business or location, except when transferred upon written authorization of the tax-collector, and that every machine so licensed must have conspicuously attached to it a metallic tag, showing the number and time for which issued. The provision as to the metallic tag is

obviously simply for the purpose of requiring proof, apparent to any one who may care to observe, or whose duty it is to observe, that the required tax on any machine in use has in fact been paid. No duty is imposed on any person operating such a machine except to pay the tax. No power or duty is imposed on any officer other than to collect the tax and to furnish the metallic tag, except that a license issued for a particular place may be transferred for use at another place on authorization of the tax-collector. No officer has a right to refuse to issue a license for any place designated by the applicant. The applicant designates the place or places, as he sees fit, and pays the tax, and the tax-collector must then issue the tag or tags. There is no limitation as to the place of operation or on the number of machines. It has been held that the mere imposition of a license-tax may indicate an exercise of the police power of regulation, but no such intent may fairly be implied from that fact here, when we consider the nature of the business involved. The business covered by section 2 is simply the sale and delivery in small quantities of *any* article of merchandise, upon payment of the stipulated purchase price therefor, by means of a mechanical contrivance operated automatically, which itself delivers the article purchased upon the deposit of the money required, without the necessity of the interposition of a salesman. It is this *mode* of making the sale and delivery that is the only attempted basis of the imposition of the tax, and there is no such difference between this mode and the ordinary mode of sale and delivery of small articles of merchandise by means of a salesman as to furnish conceivable ground for supposing, in the absence of other regulatory provisions, that the charge was imposed either for the purpose of limiting the number of the machines in use, or for the purpose of reimbursing the city for the expense likely to be imposed on it *in consequence of their use.* (See *County of Plumas* v. *Wheeler,* 149 Cal. 764, [87 Pac. 909].) That this was not intended as a regulatory tax is further indicated by the attempted discrimination made in favor of such machines when used in delivering raisins. Of course it is apparent that there is no such distinction between raisins and all other kinds of merchandise, as would warrant the lesser regulatory charge of one dollar per annum for machines used in the delivery of raisins, as against two dollars per annum for machines used in the delivery of any

other article. It is to be observed that by its terms, the ordinance applies alike to the tradesman personally conducting his business at a fixed place of business who installs in such place one or more of such machines, for the sale of certain articles of merchandise, and the owner and operator of such a machine who, by arrangement with such a tradesman, installs and operates it in his place of business. As to the tradesman so operating such a machine in his own place of business, it is obvious that there would be nothing but a mere change in his manner of selling—simply the adoption of a labor saving device, dispensing with the necessity of a clerk or salesman in consummating a very small transaction. It may be that some regulatory provisions as to the use of such machines could be sustained as a valid exercise of the police power. However, we have no such question here, for none such is contained in this ordinance. Taking into consideration the language of the ordinance, the absence of regulatory provision, and the nature of the subject of taxation, we would be shutting our eyes to the obvious facts, were we to hold that the license-tax here attempted to be imposed was imposed other than solely for the purpose of raising revenue. It is an attempted license-tax for revenue purposes only on the prescribed method or manner of making sales of merchandise, a prescribed amount for each machine.

We are thus brought to the question whether the section of the ordinance involved can be sustained as a valid exercise of the power to impose a license-tax for revenue purposes.

As the foregoing discussion has made apparent, the tax imposed by section 2 of the ordinance is imposed solely on such vendors of small articles of merchandise as use such a machine in making their sales and deliveries as is described therein. The vendor who sells and delivers the same articles through the medium of a clerk, salesman, or other human agency is not required to pay any license-tax. Indeed, in view of the provisions of the San Francisco charter, no license-tax can be imposed upon any person who "at any fixed place of business in the city and county, sells . . . goods, wares, or merchandise," except such as require, by express charter provision, permits from the board of police commissioners for the doing of their business (art. 2, chap. 2, sec. 1, subd. 15; *Rapp* v. *Kiel,* 159 Cal. 702, [115 Pac. 651]), and such permits are required only as to a few classes of mer-

chants, such as retail liquor dealers, pawn-brokers, peddlers, junk shop dealers, and dealers in second-hand goods. It is urged that *all* these machines are operated at *fixed places of business* in the city and county, within the meaning of the language of this provision, section 3 of the ordinance specially providing that the license must designate the particular place of business or location where the machine is to be used, and that those using them are therefore exempted from license-tax by the charter. There is some force in this contention. But whether it be well based or not, we are unable to perceive any warrant for the discrimination against the vendor who uses such a machine in making sales and deliveries. The license-tax attempted is one solely on his *mode* of making his sales and deliveries, without any reference whatever to the amount of business done. If he uses such a machine, or machines, for that purpose, he must pay a license-tax of two dollars per annum for each machine so used. If he sells and delivers the very same merchandise in any other manner, he is not required to pay any license-tax at all. It is elementary that there must be equality and uniformity in the imposition of license-taxes for revenue purposes, and that any classification providing different charges for those engaged in the same business, a charge for some and exemption for the others, must be one founded upon some natural and reasonable distinction pertinent to the matter. So, different charges may be imposed on those engaged in the same business, proportioned to the amount of business done, estimated in many different ways (see *Ex parte Lemon*, 143 Cal. 558, [65 L. R. A. 946, 77 Pac. 455] ; *Bramman* v. *City of Alameda*, 162 Cal. 648, [124 Pac. 243] ), and this is the usual basis of any difference in the amount of charge on those engaged in the same business. But, and we are now speaking solely of revenue taxes, we know of no principle that warrants the imposition of a tax on some of those engaged in a certain business solely because of the method they use in making their sales and deliveries, and the exemption of all engaged in the very same business who do not use that method. We are speaking, of course, of methods not involving any occupancy or use of public property, such, for instance, as the use by wagons of a public highway. A tax thus imposed is really one solely on the method used by the merchant, and not on the business, a tax of the same nature as would be one imposed on a trades-

man solely because of his use in making sales of such articles as a computing scale, a cash register, a cash carrier or some other such modern device. A difference in such mere methods of making sales and deliveries does not furnish a proper basis for classification of vendors of merchandise. The case of *Seattle* v. *Denchor*, 58 Wash. 501, [137 Am St. Rep. 1076, 28 L. R. A. (N. S.) 446, 108 Pac. 1086], is directly in point, and sustains our conclusion that there is no legal ground for any such distinction as that attempted to be made by the city and county of San Francisco in this matter. The same principle was applied by this court in *Ex parte McKenna*, 126 Cal. 429, [58 Pac. 916], where an ordinance discriminating against merchants using trading stamps in the conduct of their business was declared invalid.

We are of the opinion that section 2 of the ordinance in question cannot be upheld as a valid enactment.

The petitioner is discharged from custody.

Shaw, J., Melvin, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.