[Civ. No. 20464.   First Dist., Div. One.   Nov. 19, 1962.]

EUGENE M. SWANN et al., Plaintiffs and Appellants v. EUGENE H. BURKETT et al., Defendants and Respondents.

Geoffrey C. Hazard and Reeser, Farrow, Barton & Barton for Plaintiffs and Appellants.

Howard W. Wayne for Defendants and Respondents.

BRAY, P. J.—Appeal certified to this court by the Appellate Department of the Alameda County Superior Court.

### QUESTION PRESENTED

Is a person renting the units in a "triplex" dwelling operating a "business establishment" within the meaning of the Unruh Civil Rights Act (Civ. Code, § 51)?

### RECORD

Plaintiffs, husband and wife, brought suit in the Municipal Court of the Berkeley-Albany Judicial District under the Unruh Act to recover damages, alleging that defendants were the owners of a triplex dwelling in Berkeley and that defendants had refused to rent one of its units to plaintiffs for the sole reason that plaintiffs are Negroes. The trial was before the court without a jury. The evidence showed that defendants, who owned and lived in their own home in another location, owned two pieces of property in Berkeley, one consisting of a triplex and a rear garden cottage on Benvenue Street, and the other consisting of two units and a rear garden cottage on Hillegass Avenue. Both properties consist of living units and are considered "income property." Defendants maintain no

office, and employ no persons to assist them in the rental or maintenance of these properties.

On completion of plaintiffs' case, defendants moved for a nonsuit on the ground pertinent here, that the activities conducted by defendants in connection with the triplex did not constitute a "business establishment" within the meaning of Civil Code section 51. The motion was granted. Plaintiffs appealed to the Appellate Department of the Superior Court. That court held that defendants' activities constituted the conducting of a "business establishment" and reversed the judgment. The appellate department on its own motion then certified the action to this court[1] stating the question to be determined to be: "Is an apartment building operated by its owner to produce income, and not used or occupied by him for any personal purpose, included within the term 'business establishment of every kind whatsoever' . . ." as used in section 51? As the building in question here is a triplex and there seems to be a distinction between an apartment building and a triplex, it may be that the appellate department made the question too broad in applying the question to "an apartment building." We desire to and will limit the question to the situation here; namely, a triplex within the provisions of section 51. We understand a triplex to be a structure consisting of three separate units or flats, complete in themselves and rented separately. Quite often one of the units is occupied by the owner.

## "BUSINESS ESTABLISHMENT"

The portion of section 51 pertinent here reads: "All citizens within the jurisdiction of this State are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Section 52 makes liable for the actual damages plus $250 any person who denies or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of race, color, etc., contrary to the provisions of section 51.

The above language was placed in section 51 by amendment in 1959 (Stats. 1959, ch. 1866, § 1, p. 4424). Since that time four cases have considered the section.

The first case is *Burks* v. *Poppy Construction Co.* (March

---

[1] Pursuant to California Rules of Court, rules 62, 63. (Formerly Rules on Transfer of Municipal and Justice Court Appeals, rules 62, 63.)

1962) 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P. 2d 313]. There the defendant Poppy Construction Co. was engaged in the developing, building and selling of tract homes, which it advertised for sale to the public. The plaintiffs, Negroes, sued the defendant company and its employee in two causes of action, one claiming a violation of the Unruh Act, the other claiming a violation of the Hawkins Act (Health & Saf. Code, § 35720, which makes it unlawful for the owner of housing accommodations which were "publicly assisted," as there set forth, to discriminate against any person because of race, etc., in connection with the rental or sale of the housing accommodation). The trial court sustained a demurrer without leave to amend to the first count (the Unruh count). In reversing, the Supreme Court held, "It is clear that defendants operated 'business establishments' within the meaning of the term as used in the Unruh Act." (P. 469.)

The second case is *Lee* v. *O'Hara* (March, 1962) 57 Cal.2d 476 [20 Cal.Rptr. 617, 370 P.2d 321]. There the defendants were licensed real estate brokers who, the complaint alleged, were "retained in that capacity to rent certain described premises to any member of the public ready, willing, and able to rent such premises upon the terms offered. In February 1961 plaintiff [a Negro] requested defendants to procure possession of the premises for him upon the offered terms, and defendants refused to rent to plaintiff solely because of his race." (P. 477). In reversing the trial court's action in sustaining a demurrer without leave to amend to the complaint alleging the above matter, the Supreme Court said, "The office which a real estate broker is required by law to maintain at a specified location, and from which his business must be transacted, is a business establishment within the meaning of the Unruh Act." (P. 478.)

The third case is *Vargas* v. *Hampson* (March, 1962) 57 Cal.2d 479 [20 Cal.Rptr. 618, 370 P.2d 322]. There it was alleged in the complaint that the defendant, a real estate broker, was engaged in that capacity in connection with the sale of real property in a tract development, and that the defendant refused to sell real property in the tract to the plaintiffs, who were Mexican. The Supreme Court held that the complaint stated a cause of action against the defendant for violation of the Unruh Act. However, the complaint was ambiguous and uncertain in some respects, and the trial court had sustained a special demurrer on those grounds as well as on general grounds, but with leave to amend. Because of the plaintiffs' refusal to amend to clear up the uncertainties and am-

biguities the Supreme Court affirmed the judgment of the trial court based upon the sustaining of the special demurrer.[2]

The first case, then, dealt with persons engaged in building, developing and selling tract homes, the second and third with real estate brokers in the business of selling and renting homes.

A fourth case, *Abstract Investment Co.* v. *Hutchinson* (May 1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309] was an action of eviction, in which the tenant set up the defense that he was being evicted solely because he was a Negro. In holding that the trial court erroneously excluded evidence in support of this defense the court discussed *Burks, supra,* and stated that the interdictions of the Unruh Act applied to the business of renting housing accommodations and that the renting of the premises on a month to month tenancy constituted a "business." The court declined to determine whether the owner was operating a "business establishment" for the reason that the record was not sufficient to enable it to do so, and that moreover, a determination of whether the owner had violated the Unruh Act was not necessary to the court's decision.

The history of sections 51 and 52 is interesting. In 1893 the Legislature enacted a statute (Stats. 1893, ch. 185, p. 220) which made it "unlawful for . . . the proprietor . . . of any opera house, theater, melodeon, museum, circus, caravan, race course, fair or other place of public amusement or entertainment, to refuse admittance to any person . . ." except that persons under the influence of liquor, guilty of boisterous conduct, or of lewd or immoral character, could be excluded. It provided that any person refused admission "to any place of amusement" contrary to this act, would recover from the proprietor his actual damages plus $100.

The penalty provision of this act became section 54, Civil Code (Stats. 1905, ch. 413, § 4, p. 554), and the other provision became section 53 (Stats. 1905, ch. 413, § 3, p. 554). In 1897 (Stats. 1897, ch. 108, p. 137) the Legislature provided "That all citizens . . . shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of inns, restaurants, hotels, eating-houses, barber-shops, bath-houses, theaters,

---

[2]In *Hudson* v. *Nixon* (March 1962) 57 Cal.2d 482 [20 Cal.Rptr. 620, 370 P.2d 324], the Supreme Court affirmed a judgment in favor of the plaintiffs for damages resulting from refusal of the defendants to rent an apartment unit in a building constructed with public assistance to the plaintiffs on the sole ground that they were of the Negro race. However, the decision was based solely upon the Hawkins Act, although the trial court judgment was based on both a violation of the Unruh and Hawkins Acts. The Unruh Act was not discussed.

skating-rinks, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable to all citizens." It then provided that any person denying to any citizen "except for reasons applicable alike to every race or color" any of the accommodations and facilities above stated, or who made any discrimination therein because of color or race, would be liable in damages in an amount not less than $50.

In 1905 (Stats. 1905, ch. 413, § 1, p. 553) the first portion of this statute became section 51 and the second portion became section 52 (ch. 413, § 2). In 1919 (Stats. 1919, ch. 210, § 1, p. 309) "public conveyances" was added to section 51. In 1923 (Stats. 1923, ch. 235, §§ 1, 2, p. 485) there was added "places where ice cream or soft drinks of any kind are sold for consumption on the premises" to both sections 51 and 52.

By Statutes 1959, chapter 1866, page 4424, sections 51 and 52 were amended to read as hereinbefore set forth, and sections 53 and 54 were repealed. It will be noted that prior to 1959 the only places as to which discrimination was prohibited were places of amusement or "of public accommodation." Section 51 covers a much broader field—"all business establishments of every kind whatsoever." This, of course, would include the places of amusement and of public accommodation theretofore mentioned, as they undoubtedly are business establishments.

Professor Harold W. Horowitz in his excellent discussion of *The 1959 California Equal Rights in "Business Establishments" Statute—A Problem in Statutory Application* (1960) 33 Southern California Law Review 260, gives the legislative history of the enactment of the 1959 statute. It was introduced as Assembly Bill 594, apparently to meet the situation caused by a trial court decision in Los Angeles holding that a privately owned grammar and secondary school was not a "place of public accommodation." The bill repealed sections 53 and 54 and amended section 51 by adding to the prohibited places "public or private groups, organizations, associations, business establishments, schools, and public facilities." It also provided the right without discrimination "to purchase real property" and "to obtain the services of any professional person, group or association." The bill also permitted discrimination for "good cause" if not based on color, race, religion, ancestry or national origin. The Assembly Judiciary Committee introduced into the bill an exception to "institutions organized primarily for the purpose of, and which practice, the furthering of a specific sectarian religious belief or a specific national culture,

and which limit their membership or affiliations to only those persons with a corresponding religious belief or national derivation." A later amendment of the bill eliminated the reference to prohibition of discrimination by "private groups" and with respect to the purchase of real property. This amendment stated that all citizens regardless of race, etc., were "entitled to the full and equal admittance, accommodations, advantages, facilities, membership, privileges, services or benefits set out, but not limited, by this section" to "all business establishments of every kind whatsoever," "all schools of every kind whatsoever" except religious schools, "any organization or institution receiving any tax advantage or exemption," or receiving assistance from the federal or state government, "business or professional organizations formed or maintained primarily for the protection or advancement of the business or professional interests of the members" and any licensed professional person. Another amendment made two changes, the religious schools exception was more specifically defined and the "organization or institution receiving any tax advantage or exemption" was limited to apply only to "charitable benefits" offered by such organization. Still another amendment changed the language concerning schools to "all schools which primarily offer business or vocational training," and eliminated the "good cause" reference in the first draft so that a discrimination would be privileged as long as it applied to all citizens alike regardless of color, etc., without reference to whether it was for "good cause." The bill then passed the Assembly. The Senate made an amendment which eliminated a number of persons or organizations who were prohibited from discriminating, leaving only "business establishments of every kind whatsoever" and "all schools which primarily offer business or vocational training." Finally the bill was amended leaving only "all business establishments of every kind whatsoever." The statute then passed both houses in the form hereinbefore set forth.

It is interesting to note that in none of the amendments made by the Legislature since the original statute in 1893, as well as in that statute, nor in any of the various changes made by the Assembly and Senate in the bill which was passed in 1959, was there any reference to discrimination in the use or rental of real property, and that the inhibition against the sale of real property which appeared at one time in the 1959 bill was not carried into the statute as enacted. At the same time that the Legislature adopted the 1959 amendments to sections 51

and 52 and repealed sections 53 and 54, it enacted the Hawkins Act (Health & Saf. Code, §§ 35700-35741). Section 35720 makes it unlawful for the owner of "any publicly assisted housing accommodation . . . to refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodation because of the race, color, religion, national origin, or ancestry of such person or persons." Section 35730 provides a right of action for restraint of a violation of section 35720 and for damages in a sum not less than $500. Section 35740 provides that the provisions of the act shall not apply to privately owned housing accommodations which are not "publicly assisted." Section 35710 defines "housing accommodation" to include "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings . . ."; also "[w]hich is located in a multiple dwelling . . ."; also "[w]hich is offered for sale by a person who owns or otherwise controls the sale of five or more housing accommodations located on land that is contiguous. . . ." The section then defines the term "multiple dwelling" as "a dwelling which is occupied, as a rule, for permanent residence purposes and which is either rented, leased, let or hired out, to be occupied as the residence or home of three or more families living independently of each other."

There seems to be some contradiction in this section. It first states that "housing accommodation" includes any building, etc., intended to be used as the home residence or sleeping place of one or more human beings. This apparently is all embracing and would include houses and multiple dwellings. However, in defining "publicly assisted housing accommodations" it apparently excepts housing accommodations offered for sale by a person who owns less than five housing accommodations located on contiguous land and multiple dwellings which are rented to be used by less than three independent families.

Under the construction of section 51 urged by plaintiffs, an anomalous situation between the Unruh Act and the Hawkins Act appears to result. The Hawkins Act as it relates to renting "publicly assisted" multiple dwellings does not prohibit discrimination in the renting of units less than three; whereas the Unruh Act contains no such exception. Again, if a person builds with "public assistance" four houses on contiguous land he is not prohibited under the Hawkins Act from discriminat-

ing in making sale thereof, while the Unruh Act makes no such exception. Why would the Legislature consider discrimination in certain dwellings less undesirable if those dwellings are built with public moneys than if built with private moneys?

In *Burks, supra,* pages 469-470, the Supreme Court held: "There is no merit to defendants' contention that the adoption of the Hawkins Act at the same session of the Legislature in which the Unruh Act was passed shows an intent that the Hawkins Act is to be the sole measure relating to discrimination with respect to real property transactions. Although the operation of the two statutes overlaps in some particulars, their provisions differ in essential respects. [Footnote omitted.] The Unruh Act relates only to discriminatory practices in 'business establishments.' The Hawkins Act is confined to discrimination by an 'owner' of a 'publicly assisted housing accommodation' with knowledge of such assistance. Some transactions, even though not involving 'business establishments' within the meaning of the Unruh Act, would nevertheless come within the terms of the Hawkins Act. Other transactions which are within the Unruh Act because they involve business establishments may not involve a 'publicly assisted housing accommodation' as defined in the Hawkins Act. . . .

". . . Both statutes are designed to discourage discrimination, and it would be unreasonable to hold that the provisions of the Hawkins Act, relating to only part of the housing field, reflect an intent to exclude from the Unruh Act all discriminatory practices with respect to housing, including those that clearly come within the terms of the Unruh Act but are not covered by the provisions of the Hawkins Act. Even as to a case appearing to come within both enactments, we cannot properly hold that the sections of the Hawkins Act were intended to exclude all operation of the Unruh Act without regard to the circumstances."

The effect of this decision is that the Hawkins Act which relates to only a part of the housing field was not intended to exclude the application of the Unruh Act to a broader concept of the housing field. This, then, brings us to the question of how much of that broader field the Unruh Act contemplates. If it was intended to cover all types of housing, it would have been a very simple matter for the Legislature to so state, as in the Hawkins Act it did as to the housing there covered. Instead, however, the Legislature used the indefinite expression "business establishments."

694

As stated in *Burks, supra,* page 471, ''Discrimination on the basis of race or color is contrary to the public policy of the United States and of this state.'' In view of the legislative history of sections 51 and 52, and particularly of the type of changes made in the 1959 legislative bill which eventually became sections 51 and 52, it is strange that the Legislature did not define what it meant by ''business establishments'' or at least indicate that the act was intended to apply to the renting of small rental units by the owner. Heretofore, the renting of property by an owner has been without any legal restriction on the owner's power of selection of his tenant or tenants. It would seem that the determination to make such a radical change in that situation as to limit that power of selection, is one which should have been clearly shown by the Legislature and should not have been left to court interpretation of such indefinite words as ''business establishment.''

However, this court is bound by the determination of the Supreme Court in *Burks, supra,* to the effect that the Legislature intended in sections 51 and 52 to cover ''housing'' and its interpretation of the words ''business establishments'' seems clearly to apply to the situation in the case at bench. There the Supreme Court defined both the words ''business'' and ''establishments.'' It said (pp. 468-469) : ''The Legislature used the words 'all' and 'of every kind whatsoever' in referring to business establishments covered by the Unruh Act (Civ. Code, § 51), and the inclusion of these words, without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term 'business establishments' was used in the broadest sense reasonably possible.

The word 'business' embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.' (See *Mansfield* v. *Hyde,* 112 Cal.App.2d 133, 137 [245 P.2d 577] ; 5 Words and Phrases (perm. ed. 1940) p. 970 et seq.) The word 'establishment,' as broadly defined, includes not only a fixed location, such as the 'place where one is permanently fixed for residence or business,' but also a permanent 'commercial force or organization' or 'a permanent settled position (as in life or business.)' (See Webster's New Internat. Dict. (2d ed. 1957) p. 874; *id.* (3d ed. 1961) p. 778.''

Under the above definitions the owner was engaged in ''a permanent settled position'' in renting his triplex units for ''gain.'' (It must be considered, too, that he was addition-

ally engaged in the "business" of renting other property, two garden cottages and a duplex.) While it is possible that renting a triplex may not heretofore have been considered generally as a "business" it would appear that in construing section 51 the Supreme Court did so in context with the purpose the Legislature had in mind and the evil which the Legislature intended to meet; namely, discrimination because of race, etc.

The facts in the *Burks, Lee* and *Vargas* cases, *supra,* can easily be distinguished from those in our case. In *Burks* the defendant Poppy Construction Company was engaged in the business of developing, building and selling a tract of housing accommodations, and the defendant Cornblum was its employee. In *Lee* the defendants were real estate brokers engaged in the business of renting certain premises; and in *Vargas* the defendant was a real estate broker engaged in the business of selling real property in a tract development. Obviously, the defendants in all three cases were operating "business establishments," and once the Supreme Court determined, as it did, that the Unruh Act covered housing, the involvement of the defendants in those cases clearly appeared. ■ In our case, the rental by an owner of his own small rental units does not so clearly appear to constitute the operation of a "business establishment." However, as we have pointed out, the definition of this term given in *Burks* brings the owner within the term.

■ Defendants' attack on the constitutionality of the Unruh Act seems more directed to the Hawkins Act than to it, for they say equal protection of the laws is denied because the owner of a triplex may not practice discrimination in renting while the owner of a duplex or a house may. No such distinction appears in the Unruh Act although it does in the Hawkins Act, and in spite of that situation the Hawkins Act was held to be constitutional. (See *Burks,* pp. 474-476.) The Unruh Act was held to be constitutional in *Burks,* page 471. ■ As to the Unruh Act being "void for vagueness" the Supreme Court in the before mentioned cases had no difficulty in determining the meaning of the act.

The judgment of the municipal court is reversed.

Sullivan, J., and Molinari, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 16, 1963.