[Civ. No. 25189.   First Dist., Div. One   Feb. 26, 1969.]

JAMES E. CLARK et al., Plaintiffs and Appellants, v. CITY OF SAN PABLO et al., Defendants and Respondents.

Phillip M. Millspaugh for Plaintiffs and Appellants.

Leland F. Reaves for Defendants and Respondents.

SIMS, J.—Plaintiffs, the owners and operators of an apartment house consisting of four rental units, have appealed from an adverse judgment in an action in which they seek a declaration that an ordinance of the City of San Pablo, which imposes a license tax on the business of operating an apartment house, is invalid and unenforceable because it unconstitutionally discriminates against plaintiffs and the other owners of apartment houses consisting of four or more rental units by failing to impose a tax on owners and operators of single family, duplex and triplex rental units. In their complaint against the city and the city officials who adopted and administer the provisions of the ordinance, plaintiffs have set forth their status, the express terms of the ordinance[1] and their conclusions concerning its validity. The defendants' general demurrer was sustained with leave to amend. The plaintiffs failed to amend after service of notice of the court's ruling, and the

---

[1] The salient provisions in question are found in Ordinance No. 333 of the City of San Pablo, adopted June 19, 1961, which amended the business license provisions of the San Pablo City Code of 1959 to read as follows:

"Section 16.1: For the purposes of this Chapter, the following words and phrases shall have the meaning respectively described to them by this Section:

"Apartment Houses.

"Apartment houses are defined as any structure occupied, designed, built or rented for occupation as a home by four or more families, each living in a separate apartment and cooking within the structure."

". . . . . . . . . . .

"Section 16.2: This Chapter is enacted solely for the purpose of raising revenue for municipal purposes and for the purpose of regulation."

". . . . . . . . . . .

"Section 16.6. Inspection and approval of premises to be licensed required.

"All licenses issued under this chapter shall be issued only after the prior inspection of the premises so licensed and the approval of the

judgment from which this appeal has been taken was entered in favor of defendants.

Plaintiffs contend that the ordinance is discriminatory and unconstitutional because there is no reasonable basis for exempting the rental of single family dwellings, duplexes and triplexes when the purpose of the ordinance is for the collection of revenue only. They allege, ''Said Ordinance is arbitrary, unreasonable, improper and therefore invalid and unenforceable as a violation of the equal protection mandate of the Fourteenth Amendment of the Constitution of the United States and similar guarantees contained under article I, sections 11 and 21, and Article IV, sections 25(19), (20) and (33) of the Constitution of the State of California, . . .'' (Cf. *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 138 [222 P.2d 879].) A review of the applicable precedents reflects that the classification inherent in the provisions of the ordinance is not so arbitrary or discriminatory as to invalidate the tax. The judgment must be affirmed.

The principles governing the imposition of occupational license taxes[2] and the classification and sub-classification of occupations for such purposes are well established. The problems arise with the application of the principles to particular facts.

It has been suggested that the renting of property cannot be a taxable occupation because renting is one of the inherent rights of property ownership. (See *City of Los Angeles* v. *Lankershim* (1911) 160 Cal. 800, 801 [118 P. 215]; and Annotation, Renting-Realty-License Tax (1964) 93 A.L.R.2d 1136, 1139-1141 and 1151-1153.) In *Edwards* v. *City of Los Angeles* (1941) 48 Cal.App.2d 62 [119 P.2d 370], the court

---

Building Inspector and the San Pablo Fire Department and/or health officers where applicable.''

''. . . . . . . . . .

''Section 16.31. Apartment Houses.

''Every person carrying on the business of operating an apartment house shall pay an annual license fee of $25.00, and, in addition, shall pay $4.00 for each and every apartment contained therein; provided, however, that any one apartment used for living quarters of the owner or manager of such property shall be exempt from the provisions of this Section. Any person owning one or more apartment houses shall pay one basic license fee.''

[2]Although the ordinance purports to be for the purpose of regulation as well as for raising revenue (see §§ 16.2 and 16.6, fn. 1, *supra*), plaintiffs have alleged that the ordinance is only used for the purpose of raising revenue. It is unnecessary to determine whether that allegation raises a factual issue which can contradict the express terms of the ordinance, because, in any event, the ordinance can be upheld as a revenue measure. (See *Bramman* v. *City of Alameda* (1912) 162 Cal. 648, 652 [124 P. 243].)

ruled, "When the owner of the realty engages in the business of supplying accommodations to lodgers, he is conducting a business different from that of letting property to tenants." (*Id.*, p. 70. See also *Gowens* v. *City of Bakersfield* (1961) 193 Cal.App.2d 79, 81-83 [13 Cal.Rptr. 820].) In *Burks* v. *Poppy Constr. Co.* (1962) 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P.2d 313], the court observed, "The word 'business' embraces everything about which one can be employed, and it is often synonymous with 'calling occupation, or trade, engaged in for the purpose of making a livelihood or gain.' (See *Mansfield* v. *Hyde*, 112 Cal.App.2d 133, 137 [245 P.2d 577]; 5 Words and Phrases (perm. ed. 1940) p. 970 et seq.)" (*Id.*, p. 468.) In *Swann* v. *Burkett* (1962) 209 Cal.App.2d 685 [26 Cal.Rptr. 286], this definition was applied to include an owner of a triplex who operated it for rental. (*Id.*, pp. 694-695.) ▆ It is concluded that the operation of an apartment house is a business that may be taxed under the general authority granted to municipal corporations under state law. (See Gov. Code, § 37101; 16 McQuillan, Municipal Corporations (3d ed. 1963 rev.) § 44.191, pp. 589-590; and Sato *Municipal Taxes* (1965) 53 Cal.L.Rev. 801, 810.) The question remains whether the classification adopted by the city is proper.

▆ "It is well settled that occupations and businesses may be classified and subdivided for purposes of taxation, and it is within the discretion of the Legislature to exact different license taxes from different classes or subclasses of businesses, subject only to the limitations of the state and federal Constitutions in regard to equal protection of the laws. ▆ No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary. [Citations.]" (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 142. Accord: *Gillum.* v. *Johnson* (1936) 7 Cal.2d 744, 759 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595]; *Los Angeles etc. Corp.* v. *City of Los Angeles* (1912) 163 Cal. 621, 627 [126 P. 594]; *Braniman* v. *City of Alameda* (1912) 162 Cal. 648, 653 [124 P. 243]; *Ex parte Lemon* (1904) 143 Cal. 558, 562 [77 P. 455, 65 L.R.A. 946]; *Web Service Co.* v. *Spencer* (1967) 252 Cal.App.2d 827, 833 [61 Cal.Rptr. 493]; *Gowens* v. *City of Bakersfield, supra,* 193 Cal.App.2d 79, 83-84; *National Schools* v. *City of Los*

Angeles (1955) 135 Cal.App.2d 311, 325 [287 P.2d 151] ; *City of San Mateo* v. *Mullin* (1943) 59 Cal.App.2d 652, 659 [139 P.2d 351]. Cf. *Barker Bros., Inc.* v. *City of Los Angeles* (1938) 10 Cal.2d 603, 606-607 [76 P.2d 97] ; *Matter of Application of Richardson* (1915) 170 Cal. 68, 73 [148 P. 213] ; *City of Los Angeles* v. *Lankershim, supra,* 160 Cal. 800, 802 ; and *Gowens* v. *City of Bakersfield* (1960) 179 Cal.App.2d 282, 285 [3 Cal.Rptr. 746] ; and see *Burks* v. *Poppy Constr. Co., supra,* 57 Cal.2d 463, 475 ; *Department of Mental Hygiene* v. *McGilvery* (1958) 50 Cal.2d 742, 754 [329 P.2d 689] [disapproved on other principles *Department of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 723 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353]] ; and *Swann* v. *Burkett, supra,* 209 Cal. App.2d 685, 695.)

▮ Conversely, it has been stated, "It is elementary that there must be equality and uniformity in the imposition of license-taxes for revenue purposes, and that any classification providing different charges for those engaged in the same business, a charge for some and exemption for the others, must be one founded upon some natural and reasonable distinction pertinent to the matter." (*Matter of Application of Richardson, supra,* 170 Cal. 68, 73. See also *City of Los Angeles* v. *Lankershim, supra,* 160 Cal. 800, 802 ; *Barker Bros, Inc.* v. *City of Los Angeles, supra,* 10 Cal.2d 603, 607 ; and *Gowens* v. *City of Bakersfield, supra,* 179 Cal.App.2d 282, 285.)

▮ In the application of these mutually exclusive principles, the city is aided by the following doctrine, "When a legislative classification is questioned, if facts reasonably can be conceived that would sustain it, their existence is presumed, and the burden of showing arbitrary action rests upon the one who assails the classification. [Citations.]" (*Burks* v. *Poppy Constr. Co., supra,* 57 Cal.2d at p. 475. See also *Department of Mental Hygiene* v. *McGilvery, supra,* 50 Cal.2d 742, 760 ; *Ex parte Lemon, supra,* 143 Cal. 558, 563-564 ; *Web Service Co.* v. *Spencer, supra,* 252 Cal.App.2d 827, 837 ; *Gowens* v. *City of Bakersfield, supra,* 193 Cal.App.2d 79, 84 ; *National Schools* v. *City of Los Angeles, supra,* 135 Cal.App.2d 311, 325-326 ; and *City of San Mateo* v. *Mullin, supra,* 59 Cal.App. 2d 652, 659.) Nevertheless, the burden so imposed "does not mean that the court must shut its ears to reason and declare in every case that *because* an ordinance has been passed there must be valid reasons for its existence." (*City of Los Angeles* v. *Lankershim, supra,* 160 Cal. 800, 803.)

Most of the foregoing precedents are reviewed along with

many others in *Web Service Co.* v. *Spencer, supra* (252 Cal.App.2d at pp. 834-835) and in *City of San Mateo* v. *Mullin, supra* (59 Cal.App.2d at pp. 654-658). No good purpose would be served by further exposition in this opinion. Each case appears to depend upon its particular facts and the predilections of the reviewing tribunal as to what is arbitrary and discriminatory.

An apartment has been defined as follows: ''The word 'apartment' in its usual and ordinary connotation signifies that its occupant acquire exclusive possession and is a tenant rather than a roomer. [Citation.]'' (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 421-422 [282 P.2d 890]. See also *Erwin* v. *City of San Diego* (1952) 112 Cal.App.2d 213, 216-217 [246 P.2d 105] ; *Edwards* v. *City of Los Angeles, supra,* 48 Cal.App.2d 62, 66-67 ; *Fox* v. *Windemere Hotel Apartment Co.* (1916) 30 Cal.App.162, 164 [157 P.820] ; Health & Saf. Code, former § 15002 [repealed Stats. 1961, ch. 1844, § 7, p. 3919, but see *id.* § 14 and § 17913 as added by Stats. 1965, ch. 152, § 3, p. 1107] ; and 24 Cal. Admin. Code, §§ 704.02 and 704.05.)

In *Edwards,* as has been noted above, the court distinguished between the business of renting lodging space to a guest or roomer, which was the subject of the questioned occupational license tax, and the business of letting property to tenants. (48 Cal.App.2d at pp. 68 and 70-71.) ■ In this case the tax is levied ''on the business of operating an *apartment house*'' (Ord., § 16.31, fn. 1, *supra;* emphasis added). Apartment houses are defined according to structure and use (Ord., § 16.1, fn. 1, *supra*), and the terms upon which the business is carried on are not mentioned in the ordinance. From all that appears, if an apartment house is in operation, the tax is payable, measured by the number of existing apartments, whether those apartments are vacant, rented for lodgings, or leased by the month or year. Inquiry is, therefore, directed to a determination of what constitutes an apartment house.

For the purposes of the State Housing Act, an apartment house historically has been defined as a structure or portion of a structure consisting of three or more apartments (Health & Saf. Code, former § 15003 [repealed Stats. 1961, ch. 1844, § 7, p. 3919, but see *id,* § 14, and § 17913, as added by Stats. 1965, ch. 152, § 3, p. 1107] ; 24 Cal. Admin Code, §§ 704.02 and 704.05; *Erwin* v. *City of San Diego, supra,* 112 Cal. App.2d 213, 216-217. See also *Edwards* v. *City of Los Angeles, supra,* 48 Cal.App.2d 62, 67; *Fox* v. *Windemere*

*Hotel Apartment Co., supra,* 30 Cal.App. 162, 164; 3 C.J.S., Apartment, pp. 1422-1423; and 27 Cal.Jur.2d, Innkeepers, § 9, pp. 257-258.)

From the foregoing it is concluded that the ordinance is not discriminatory in selecting the business of operating an apartment house as a class of business to be taxed, because apartments and apartment houses are a well recognized form of lodging or dwelling.

Plaintiffs' attack concentrates on the definition of apartment house used in the ordinance. In *Edwards* v. *City of Los Angeles, supra,* the court stated: "If the ordinance applies to all those conducting like businesses in a similar manner, the ordinance should be upheld, but if it is not uniform in its application and exempts from its operation businesses of identical character, *though bearing another name,* there is an unreasonable classification, and the ordinance must be held invalid as discriminatory." (48 Cal.App.2d at p. 66; italics added.) In *Edwards* the tax was on "the business of renting or letting any rooms in any hotel, rooming house, boarding house, apartment house or lodging house. . . ." (*Id.,* p. 65.) It was claimed that the ordinance was discriminatory because it did not include that business when conducted in a flat, bungalow, court, duplex or single family residence. The court found that the tax was imposed on the business of renting or letting rooms; that the designations in the ordinance of the places in which the lodgings were furnished were not exclusive; that it was intended to embrace all similar places regardless of how denominated by the owner, and that therefore there was no discrimination. (*Id.,* pp. 66-71.)

In *City of Los Angeles* v. *Lankershim, supra,* the tax was on the business of "maintaining, managing or conducting a building for the purpose of letting office rooms or store-rooms." The ordinance only applied to buildings containing more than 30 rooms. The court observed, ". . . it is . . . plain that no valid distinction exists based upon the size of the building or the number of offices for rent. Surely, a man who owns a building with thirty office rooms for rent is engaged in no different 'occupation' from that of the man alongside of him owning an office building with twenty-nine office rooms to rent, and if, as in the case of this ordinance, a tax is to be levied at the rate of a dollar a room upon the person engaged in the 'occupation' of renting office rooms no reason appears or is shown why, belonging to the same class as they do, the man who rents five office rooms should not pay

five dollars if the man who rents fifty is compelled to pay fifty dollars. The contention that, for the purposes of taxation, the municipal council may draw a class line at thirty rooms and declare those who rent thirty rooms and over are engaged in an occupation, while those who rent less than thirty rooms are not engaged in the same occupation, is purely fanciful as would be plainly exemplified if the ordinance imposed a tax upon those who rent from one to thirty rooms and relieved from the tax those who rented over thirty rooms. Yet, if this asserted ground of classification is substantial, the city council would have the power to do precisely this thing.'' (160 Cal. at pp. 802-803.) The opinion concludes, ''This ordinance, therefore, is unjust and discriminatory in making an unwarranted exception in favor of members of the same class, or what is the same thing phrased differently, imposing upon a part of a class artificially created, a burden not imposed upon all who stand in the same relation to the subject-matter. (*City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 P. 604]) for which reason the ordinance as to the section under consideration is invalid.'' (*Id.*, p. 804.)

Plaintiffs insist that *Lankershim* and other cases control this case. They claim that those engaged in the business of renting apartments in three-unit structures, or in duplexes, or in renting single-family units cannot be distinguished from those who are subject to the ordinance, and therefore it is discriminatory and arbitrary. In *Edwards* the court concluded, ''To the extent that an identical business is operated; that is, the renting of accommodations to lodgers, whether in a structure called a hotel, apartment, rooming house, boarding house, or lodging house, flat, bungalow court, duplex or single dwelling, is immaterial under the terms of the ordinance, the purpose of which is to collect license taxes in proportion to gross receipts.'' (48 Cal.App.2d at p. 67.) It noted, ''An 'apartment house' has been referred to as a dwelling house or a tenement house, and sometimes the term is used interchangeably with 'flats.' [Citations.] 'Duplex houses' may in fact be apartments or flats.'' (*Id.* See also 28 C.J.S., Duplex, p. 590; and 36A C.J.S., Flat, p. 751.) In *Edwards,* however, the tax was not on the operation of a particular type of structure but on the gross receipts from renting lodgings of any kind. It was particularly noted that the ordinance did not purport to expressly define ''apartment house'' or the other terms used. (*Id.*, pp. 69-70.) Conversely, in *Gowens* v. *City of Bakersfield, supra,* 179 Cal.App.2d 282, where the tax was on the lodger's use of a room, the question of discrimination was

presented by an express definition of the type of establishment, those offering lodging for five or more persons, which bore no relationship to the subject of the tax—the privilege of occupancy by the transient lodger (179 Cal.App.2d at pp. 285-286).

In *Lankershim* there was no attempt to justify the exception of buildings containing less than 30 rooms for rent. It is recognized that a legislative body may classify and subdivide classes within those engaged in one generic field of activity where there is a reasonable basis for such action. *(Fox etc. Corp. v. City of Bakersfield, supra,* 36 Cal.2d 136, 143; *Los Angeles etc. Corp. v. Los Angeles, supra,* 163 Cal. 621, 627; *Bramman v. City of Alameda, supra,* 162 Cal. 648, 653; *Ex parte Lemon, supra,* 143 Cal. 558, 562; *Web Service Co. v. Spencer, supra,* 252 Cal.App.2d 827, 833; and *National Schools v. City of Los Angeles, supra,* 135 Cal.App.2d 311, 326.) Several "facts reasonably can be conceived that would sustain" the subclassification adopted by the city council.

In the first place since the tax is on the business of operating an apartment house, it would not apply to the operation of a single unit, presumably a single-family dwelling. Duplexes, as noted above, may in fact be houses containing two apartments, but they are recognized as a distinct type of structure, and may be categorized separately for the purposes of zoning. (2 Metzenbaum, Law of Zoning (2d ed. 1955) Chap. X-m-(9), p. 1588; Yokley, Zoning Law and Practice (1948) § 179, pp. 361-362; 8 McQuillin, Municipal Corporations (3d ed. 1965 rev.) § 25.107, pp. 297-298. See also § 25.100, p. 280, and see *Polk v. Axton* (1948) 306 Ky. 498, 503-504 [208 S.W.2d 497, 500-501]; *Wilkins v. City of San Bernardino* (1946) 29 Cal.2d 332, 337 [175 P.2d 542]; *City of San Mateo v. Hardy* (1944) 64 Cal.App.2d 794, 796-797 [149 P.2d 307]; and *State ex rel. Clifton-Highland Co. v. City of Lakewood* (1931) 124 Ohio St. 399 [178 N.E. 837], affg. (1931) 41 Ohio App. 9 [179 N.E. 198].) In fact it is recognized that apartment houses may be classified by size and that large apartments may be excluded from certain zones. (See *Matter of Wulfsohn v. Burden* (1925) 241 N.Y. 288, 301 [150 N.E. 120, 123-124].) The State Housing Act, as referred to above, has distinguished between structures containing three rental units, and those of single or two-family occupancy. The latter are free of state regulation.[3]

---

[3]Since the regulatory powers exercised by the state and the taxing and regulatory powers which the city seeks to exercise have different

In *Swann* v. *Burkett, supra,* 209 Cal.App.2d 685 it was noted that the law prohibiting discrimination in housing was not deemed to deny equal protection of the laws because it exempted dwellings housing less than three families. (209 Cal. App.2d at p. 695. See Health & Saf. Code, § 35720 and § 35710, subd. 6, both before and after 1963 amendments.) The court, while holding, under the compulsion of *Burks* v. *Poppy Constr. Co., supra,* 57 Cal.2d 463, that the rental of a triplex was the operation of a "business establishment" within the provisions of the Civil Code, noted, "As the building in question here is a triplex and there seems to be a distinction between an apartment building and a triplex, it may be that the appellate department made the question too broad in applying the question to 'an apartment building.' We desire to and will limit the question to the situation here; namely, a triplex within the provisions of section 51. We understand a triplex to be a structure consisting of three separate units or flats, complete in themselves and rented separately. Quite often one of the units is occupied by the owner." (209 Cal.App.2d at p. 687.) The court recognized, "In our case, the rental by an owner of his own small rental units does not so clearly appear to constitute the operation of a 'business establishment.' " (*Id.,* p. 695.)

In the regulations promulgated under the State Housing Act, as revised in 1961 (Stats. 1961, ch. 1844, p. 3919, Health & Saf. Code, § 17910 et seq., particularly § 17921), it is provided that a janitor must be provided for apartment houses in which there are more than 15 apartments, and that "if the owner does not reside upon the premises of any apartment house in which there are more than four but less than sixteen apartments," certain notices must be posted. Three and four unit buildings are apparently exempt from this state regulation.

■■■ The regulatory classifications do not establish categories which unqualifiedly may be seized upon by the legislative body for the purpose of classifying occupational groups

---

objectives, the definitions adopted by the Legislature are not binding on the city council in the exercise of its delegated powers. (See Cal. Const., art. XI, § 11; and Gov. Code, § 37101.) The state has determined that if three or more units are located in one building certain structural requirements must be met. It has not purported to dictate where such structures may be built, or that structures containing one or more units cannot be otherwise classified for different purposes. (See *Higgins* v. *City of Santa Monica* (1964) 62 Cal.2d 24, 31-32 [41 Cal.Rptr. 9, 396 P.2d 41]; and 3 Witkin, Summary of Cal. Law (1960) Constitutional Law, §§ 162-163, pp. 1973-1974 and 1967 Supp., pp. 832-834.)

or subgroups for the purpose of taxation. They do, however, carry with them an implication of a factual background which may be relevant on the validity of the classifications adopted in the taxing ordinance.

It is recognized that classifications for taxing purposes may be based on the size or volume of business done by the occupation or trade to be taxed. (See *Bramman* v. *City of Alameda, supra,* 162 Cal. 648, 653; *Ex parte Lemon, supra,* 143 Cal. 558, 562; *Web Service Co.* v. *Spencer, supra,* 252 Cal.App.2d 827, 835; *Gaulden* v. *Kirk* (Fla. 1950) 47 So.2d 567, 576; *Fulgum* v. *Mayor etc. of Nashville* (1881) 76 Tenn. (8 Lea.) 635, 639-640; and cf. *Matter of Application of Richardson, supra,* 170 Cal. 68, 73; and *Gowens* v. *City of Bakersfield, supra,* 179 Cal.App.2d 282, 286.) The method of doing business also may be a significant factor. (See *Bramman* v. *City of Alameda, supra,* at p. 653; *Ex parte Lemon, supra,* at p. 562; *Web Service Co.* v. *Spencer, supra,* at p. 834; *National Schools* v. *City of Los Angeles, supra,* at p. 326; *City of San Mateo* v. *Mullin, supra,* at p. 655.) Another consideration is the burden placed upon the community in relation to the particular classifications established within the business. (See *Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 144; *Bramman* v. *City of Alameda, supra,* 162 Cal. 648, 654-655; and *McBriety* v. *City of Baltimore* (1958) 219 Md. 223, 234-236 [148 A.2d 408, 415-417].) Finally, it may be noted that the legislative body may consider that small operations have little or no commercial significance, and that their inclusion would unduly enhance the administrative problems of collecting the tax. (See *Gillum* v. *Johnson, supra,* 7 Cal.2d 744, 749; *Los Angeles etc. Corp.* v. *Los Angeles, supra,* 163 Cal. 621, 627; *Gaulden* v. *Kirk, supra,* 47 So.2d 567, 576; and *Fulgum* v. *Mayor etc. of Nashville, supra,* 76 Tenn. (8 Lea.) 635, 639-640.) If the classification is proper, the exemption will not give grounds for a claim of discrimination. (See *Fox etc. Corp.* v. *City of Bakersfield, supra,* at p. 144; *Los Angeles etc. Corp.* v. *Los Angeles, supra,* at p. 627; *McBriety* v. *City of Baltimore, supra,* at pp. 234-236; *Gaulden* v. *Kirk, supra,* at p. 576; and *Fulgum* v. *Mayor etc. of Nashville, supra,* at p. 635.)

In the light of these considerations the lower court properly upheld the validity of the tax in question. The city council may well have recognized that the size of the operation—those involving four or more units—was an important consideration which would affect the burdens placed upon the

community with respect to health, fire prevention, street use and congestion, and safety; that the operations involving smaller structures would be harder to detect and lead to difficulties in the administration and enforcement of the law; and that the operations involving smaller structures did not rise to the dignity of a commercial enterprise. In determining to give effect to these criteria the council approximated classifications which bear a close relation to those used in zoning regulations, of themselves a factor which would affect the ease of enforcement and administration of the tax law. No arbitrary discrimination appears.

It is suggested that discrimination exists because a person engaged in renting four single family dwellings, or four units in two duplexes, or four units in a single-family dwelling and a triplex, would be engaged in substantially the same type of "business" as the operator of a four-unit apartment house, but would not have to pay the $41 tax which is exacted from the operator of the apartment house. The problems and economics of managing more individual units furnishes a distinction which warrants the classification selected by the city (see *Web Service Co.* v. *Spencer, supra,* 252 Cal.App.2d 827, 837-838), as do also the elements of the services to be rendered and the trouble and expense of administration of the tax. The renting of single family dwellings puts no burden on the community that does not exist when the home is occupied by the owner. The determination of which dwellings are owner-occupied, and which are tenant-occupied, would constitute a considerable task and could not be resolved by visual inspection. The weight of these factors decreases as the size of the structure containing the units increases, but for the reasons stated the line of demarcation drawn by the city council is deemed reasonable.

A similar contention, advanced in *Los Angeles etc. Corp.* v. *Los Angeles, supra,* was answered as follows: "Nor is the exception of manufacturers of acetylene gas and owners of gas wells from the burden of the ordinance inherently unreasonable. There is a vast difference between a business using the streets for pipes, wires, and conduits and one in which the product is delivered in portable tanks, and while the owner of a great number of gas wells, each producing a revenue less than fifty dollars a month might escape his just proportion of the license-tax, we must presume that the local legislative body, familiar with existing conditions, did not pass an unreasonable by-law and that the number of wells each pro-

ducing less than fifty dollars per month and owned and operated by a single person or corporation is not considerable." (163 Cal. at p. 627.)

The taxpayers rely upon precedents from other jurisdictions which have held classifications without any valid basis to be discriminatory. (See *Matheny* v. *City of Hutchinson* (1942) 154 Kan. 682 [121 P.2d 227, 151 A.L.R. 1187] (vending machines, exception of operation of less than four); *Great Atlantic & Pac. Tea Co.* v. *Kentucky Tax Comn.* (1939) 278 Ky. 367 [128 S.W.2d 581] (stores in same ownership classified by number); and *City of Douglas* v. *South Georgia Grocery Co.* (1935) 180 Ga. 519 [179 S.E. 768, 99 A.L.R. 700] (cash and carry store vs. store furnishing delivery).) These cases do not control the situation presented in this case.

In *Martin* v. *City of Greenville* (1950) 312 Ky. 292 [227 S.W.2d 435] and *City of Greenville* v. *Martin* (1948) 308 Ky. 247 [214 S.W.2d 271], the Kentucky court dealt with Greenville's attempt to tax the business of operating apartment houses. In the earlier case it struck down a tax which in effect exempted apartment houses of less than three apartments and stated, "the classification is based primarily upon differences in number only and therefore is void." (308 Ky. at p. 248 [214 S.W.2d at p. 272].) In that case the facts revealed that there were only three out of 43 apartment houses in the city which would be subject to the tax. In the later case an ordinance which purported to tax all apartments, but graduated the tax according to the particular number within any structure was adjudged unreasonable on the same ground.

*Martin* appears to be in conflict with other authorities which have recognized the right to classify the subjects of a privilege or occupation tax similar to that involved here. (See *McBriety* v. *City of Baltimore, supra,* 219 Md. 223 [148 A.2d 409]; *Gaulden* v. *Kirk, supra,* 47 So.2d 567; *Fulgum* v. *Mayor etc. of Nashville, supra,* 76 Tenn. (8 Lea.) 635.) The latter cases appear to be consistent with the approach taken by the courts of this state,[4] and support the views exposited here.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

---

[4]*Fulgum* v. *Mayor etc. of Nashville* (1881) 76 Tenn. (8 Lea.) 635, was cited with approval in *Ex parte Lemon* (1904) 143 Cal. 558, 562

[77 P. 455, 65 L.R.A. 946], an opinion upholding a classification within a business which was concurred in by the author of the departmental opinion in *City of Los Angeles* v. *Lankershim* (1911) 160 Cal. 800 [118 P. 215]. Thereafter, the same justice joined in the departmental opinion in *Bramman* v. *City of Alameda* (1912) 162 Cal. 648 [124 P. 243], which upheld a classification according to the method of doing business. *Lankershim*, then may well stand for the limited principle that where the line drawn between classification is ''purely fanciful'' (160 Cal. at p. 803), the ordinance cannot be sustained.