[Civ. No. 31385.   Second Dist., Div. Four.   Sept. 25, 1967.]

GENE SEARLES, Plaintiff and Respondent, v. THE MU-
NICIPAL COURT OF THE DOWNEY JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant
and Respondent; THE PEOPLE, Real Party in Interest
and Appellant.

Evelle J. Younger, District Attorney, Harry Wood and
Robert Lederman, Deputy District Attorneys, for Real Party
in Interest and Appellant.

Ramsey, Emlein & Cullum, and J. Raymond Cullum for
Plaintiff and Respondent.

No appearance for Defendant and Respondent.

BISHOP, J. pro tem.*—The petitioner, charged with a
misdemeanor in that he had operated a number of stamp
vending machines without the license that a city ordinance
required, first demurred and moved to dismiss, without
success, and then filed this petition for an alternative writ of
prohibition, leading to a peremptory writ. He made the
municipal court in which he was being prosecuted a respond-
ent, and named the People of the State of California, by their

---

*Retired judge of the superior court sitting under assignment by the
Chairman of the Judicial Council.

attorney Evelle J. Younger, District Attorney for the County of Los Angeles, as the real party in interest. When the court granted petitioner's prayer for the peremptory writ, the real party in interest appealed. We are reversing the order.

The real issue on this appeal is whether the order was required by the Supreme Court's decision in the *Matter of the Application of Ralph M. Richardson* (1915) 170 Cal. 68 [148 P. 213]. There, the petitioner for a writ of habeas corpus had been convicted, and was in custody, on a charge of having operated a match machine with a nickel-in-the-slot attachment, without first having procured a license from the tax collector, as required by an ordinance "imposing a license on nickel-in-the-slot machines." The conclusion reached was that an offense had not been created, because there was no legal justification for taxing one mode of carrying on a legitimate business when all other modes were left tax free. It will suffice to quote just these portions of the court's opinion: (p. 72) "[T]he tax imposed by section 2 of the ordinance is imposed solely on such vendors of small articles of merchandise as use such a machine in making their sales and deliveries as is described therein. The vendor who sells and delivers the same articles through the medium of a clerk, salesman, or other human agency is not required to pay any license-tax. Indeed, in view of the provisions of the San Francisco charter, no license-tax can be imposed upon any person who 'at any fixed place of business in the city and county, sells . . . goods, wares, or merchandise,' . . . [with a few exceptions, such as liquor dealers]." Quoting again: "If he uses such a machine, or machines, for that purpose, he must pay a license-tax of two dollars per annum. . . . If he sells and delivers the very same merchandise in any other manner, he is not required to pay any license-tax at all."

The ground on which the petitioner in the *Richardson* case escaped having to pay his $5.00 fine or be imprisoned one day, is not available to the petitioner in our case. Sure, he can point to a number of business concerns who are using stamp vending machines such as his and paying no license tax specifically for so doing. The reason for their escape, however, is that they are licensed and paying a tax for carrying on a business in which their stamp machine is one means of doing business, but not the sole means. The ordinance that sets the license fee that the petitioner did not pay and would escape paying, calls for licenses, obtainable on a number of endeavors, which may include, without special mention, his single,

simple method. If, by any chance, the business carried on by any person is not specifically mentioned in the license ordinance, this net thrown out by section 6255 of the Downey Municipal Code, catches him: "For every person conducting . . . any business . . . not otherwise specifically licensed by this chapter, there shall be an annual license fee measured by gross receipts as follows:" And a list follows. We use as ours these words from the appellant's opening brief (p. 6) : "It is obvious that all retailers and all of those doing business within the city must pay some license fee." We conclude, therefore, that the petitioner is not authorized by the *Richardson* case to escape the license fee specifically aimed at his method of doing business.

Nor do we find that he may escape paying his license fee of $1.00 to $5.00 per year per vending machine because it is an unlawful burden on interstate commerce. That which happens is simply outlined. Some stamps—airmail, let us say—are purchased from the federal government by the villain of our story. He places these in a vending machine to whom some people will turn because conveniently available at a time when they wish to purchase them. They will have to pay more than they would if they bought them at a U.S. Post Office, for the owner of the vending machine has to receive their face value plus a bit to pay for his license and other business expense plus a profit. The commercial transaction described so far ends when the coin drops and the stamp emerges from the machine. Quite plainly, there has been no interstate commerce burdened so far, for none has been engaged in. Then, sometime later, the stamps are put on envelopes, some of which will be addressed to Oregon or Arizona or some other state, and mailed there. Where, in all this, is there placed on interstate commerce that burden that condemns the small yearly license fee he has to pay who furnished the stamps in his machine?

No case was cited to us and we discovered none that has persuaded us that the fee petitioner has declined to pay is an unlawful burden on interstate commerce. We quote a short passage from *Barker Bros., Inc.* v. *City of Los Angeles* (1938) 10 Cal.2d 603, 609-610 [76 P.2d 97, 100] : "All taxation has some incidental and indirect effect upon interstate commerce. . . . 'The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only

incidentally or remotely, so that the tax is not in reality a burden,' . . . '' This inner quotation was from *Hump Hairpin Co.* v. *Emmerson* (1922) 258 U.S. 290, 295 [66 L.Ed. 622, 625, 42 S.Ct. 305]. This is not a game we are playing in which a player is ''out'' just because he is touched.

The order is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 17, 1967, and the petition of plaintiff and respondent for a hearing by the Supreme Court was denied November 22, 1967.