[L. A. No. 2865.   Department Two.—August 27, 1912.]

# LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATIONS—CITY OF LOS ANGELES—LICENSE-TAXES IM-
POSED ON RECEIPTS OF ELECTRIC AND GAS BUSINESS—QUARTERLY
PAYMENTS IN ADVANCE BASED ON RECEIPTS DURING PRECEDING
QUARTER.—Under the provisions of sections 3, 4, and 9, of ordinance
No. 20,000 (New Series), of the city of Los Angeles, the license im-
posed by section 39 thereof, providing that "every person, firm or
corporation conducting, managing or carrying on the business of
furnishing or supplying electricity for light, heat or power," shall
pay "one-third of one per cent of the gross receipts of such person,
firm or corporation for the sale of electricity furnished within the
city of Los Angeles which amount shall be payable quarterly," and
also the license imposed by a similar provision with reference to the
gas business, are required to be paid quarterly in advance, based
upon the income, in each instance, of the preceding quarter.

ID.—DUTIES OF CITY CLERK ARE MINISTERIAL.—The duties imposed upon
the city clerk, in fixing the amount of the license in accordance with
the method prescribed by section 9 of the ordinance, are purely minis-
terial and not legislative.

ID.—FILING STATEMENT OF RECEIPTS—TIME OF FILING.—The provision
of that section requiring that, before obtaining a license, a state-
ment of the amount of receipts shall be filed "within five days from
the beginning of each license period," should be construed as re-
quiring such filing during the first five days of a new quarter.

ID.—ORDINANCE NOT DISCRIMINATIVE—EXEMPTION OF NEWLY ESTAB-
LISHED BUSINESS—FAILURE TO FIX MINIMUM RATE OF LICENSE.—
The fact that section 9 of the ordinance, which in terms requires a
license for any newly established gas or electric business to be paid
at the minimum rate therein prescribed during the first license period
in which such business is in operation, fails to establish such mini-
mum rate, does not render the ordinance discriminative and void as
to persons or corporations carrying on an established business of
that character.   While a slight advantage might thus be given to a
new enterprise, there is nothing to prevent the governing body of a
municipality from bestowing such favor upon a starting business.

ID.—FAILURE TO FIX MAXIMUM RATE OF LICENSE—PROVISIONS FOR EN-
FORCEMENT OF PAYMENT.—The fact that section 9 does not apply
to gas or electric corporations, in so far as it contemplates the collec-
tion of the maximum rate of license from persons or corporations
failing to file the statement prescribed, does not render the ordinance

discriminative as to them, because other sections provide for the collection of unpaid license-taxes by civil process, the imposition of penalties for failure to make timely payment and the punishment of any one operating in violation of law without a license.

ID.—ACETYLENE GAS MANUFACTURERS—GAS FURNISHED FROM NATURAL WELLS—EXCEPTION NOT UNREASONABLE.—The exception from the payment of such license of those engaged in the business of manufacturing and distributing acetylene gas, compressed in tanks, and of those furnishing gas from a natural well where the amount of money received therefor is less than fifty dollars per month, is not inherently unreasonable, and it will be presumed that conditions existed which warranted the local legislative body in making the exception.

ID.—LICENSE IMPOSED ON COMPANY HAVING CONTRACTUAL RELATIONS WITH CITY—OBLIGATION OF CONTRACT NOT IMPAIRED.—An electric lighting company which was paying a license-tax at the time it entered into a contract with the municipality for furnishing electricity to light the streets of the city, will be deemed to have made the contract in view of the city's right to impose a license-tax upon its business, and the subsequent imposition, during the life of the contract, of a different license-tax, provided it is reasonable, is not an impairment of the obligation of the contract.

ID.—POWER TO COLLECT LICENSE-FEES—INTENT OF CITY TO DEPRIVE ITSELF OF POWER MUST CLEARLY APPEAR.—While a city may, by contract, deprive itself of the power to collect license-fees, that power is presumed to exist unless an unequivocal intention to the contrary appears from the terms of the agreement.

ID.—TAKING EFFECT OF ORDINANCE SUBMITTING LICENSE ORDINANCE TO REFERENDUM ELECTION—MATTER AFFECTING PUBLIC PEACE, HEALTH AND SAFETY—CHARTER OF LOS ANGELES.—The early submission to vote at a referendum election of an ordinance of the city of Los Angeles, which contains penal provisions regulating the carrying on of a large number of professions, trades, callings, and occupations in that city, and fixes and establishes the rates of licenses therefor, the payment of which was designed to form a large part of the revenues of the city, and the collection of which was necessary for the proper carrying on of the city government, is a matter affecting the public peace, if not the public health and safety; consequently, an ordinance providing for the calling of such election may be made to take effect, under section 198b of the charter of that city, less than thirty days from the time of its final passage, and its approval by the mayor.

APPEAL from a judgment of the Superior Court of Los Angeles County.   N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Wm. A. Cheney, George P. Adams, and LeRoy M. Edwards, for Appellant.

John W. Shenk, City Attorney, E. R. Young, Assistant City Attorney, and Leslie R. Hewitt, for Respondents.

MELVIN, J.—Plaintiff brought an action for an injunction to prevent the enforcement against it of ordinance No. 20,000 (New Series), of the city of Los Angeles, and seeking to have that part of said ordinance relating to the gas and electric business of plaintiff declared void. A demurrer to the complaint was sustained, and plaintiff declining to amend, judgment was given against it. From that judgment this appeal is taken.

The objections of appellant to the validity of the ordinance are based generally upon its alleged uncertainty and its supposed contravention of the fourteenth amendment to the constitution of the United States. The ordinance provides that license shall be imposed as follows upon one of the enterprises conducted by plaintiff:

"Sec. 39. For every person, firm or corporation conducting, managing or carrying on the business of furnishing or supplying electricity for light, heat or power, one-third of one per cent. of the gross receipts of such person, firm or corporation for the sale of electricity furnished within the city of Los Angeles which amount shall be payable quarterly."

The provision with reference to the gas business is practically the same as that applicable to the furnishing of electricity, except the business of manufacturing and distributing acetylene gas, compressed in tanks is excepted from the payment of license, as is that of furnishing gas from a natural gas well where the amount of money received therefor is less than fifty dollars per month. Appellant insists that these sections standing alone would make the license payable only after the expiration of a quarter and an ascertainment of the gross amount of business transacted by the company, and that there is no provision for the specified percentage of one-quarter's business being paid in advance for the right to operate for the coming quarter. But we find that section 4 of the ordinance thus provides for the payment of quarterly licenses: "The quarterly licenses in this ordinance provided

shall be due and payable to the city on the first days of January, April, July and October, and all such licenses shall expire with the last days of March, June, September and December of each year, but the first quarterly license issued to any person, as herein provided, shall be issued for the unexpired one-third or two-thirds of the current quarter.'' Section 3 is as follows: ''It shall be the duty of the city clerk to prepare and issue a license under this ordinance for every person, firm and corporation liable to pay a license hereunder, and to state in each license the amount thereof, the period of time covered thereby, the name of the person, firm, or corporation for whom issued, the trade, calling, profession or occupation licensed and the location or place of business where such trade, calling, profession or occupation is to be carried on.    The city clerk shall deliver such license to the city auditor and said city auditor shall sign and deliver the same to the city tax and license collector for collection and take his receipt for the amount thereof.    In no case shall any mistake by the city clerk in stating the amount of a license prevent or prejudice the collection for the city of what shall be actually due from any one carrying on a trade, calling, profession or occupation subject to a license under this ordinance.''    It is evident from the foregoing quotations that the purpose of the framers of the ordinance was to require payment of the quarterly license in advance based upon the income, in each instance, of the preceding quarter, because obviously it would be impossible to determine such income in advance.    If there were any doubt upon this point, it would be removed by section 9 of the ordinance, which is in part as follows: ''In all cases where the amount of license to be paid by any person, firm or corporation is based upon the amount of receipts or sales, or of business transacted . . . such person, firm or corporation shall, before obtaining a license for his, their or its business, and within five days from the beginning of each license period, if such business is established or in operation during any part of said five days, render to the city clerk for his guidance in fixing the amount of license to be paid by said person, firm or corporation, a written statement, sworn to before some officer authorized to administer oaths, showing the total amount of receipts or sales, or of business transacted. . . . Such statement shall not be conclu-

sive as to the amount of license to be paid by such person, firm or corporation. If any person, firm or corporation hereby required to make such a statement shall fail to do so, such person, firm or corporation shall be required to pay a license at the maximum rate herein prescribed for the trade, calling, profession or occupation carried on by such person, firm or corporation, and shall be guilty of a violation of this ordinance and be punishable therefor as hereinbefore provided; provided, however, that where the first license is to be issued for a newly established business no statement need be made of the amount of receipts, or sales, or business transacted, . . . and the minimum rate herein prescribed shall be charged for any newly established business, the amount of license for which is regulated by the amount of receipts, or sales, or business done . . . during the first license period in which such business is in operation." Appellant insists that this section does not apply to cases where the amount of the license is a percentage of the business done, but to instances in which a definite license is exacted for a certain business or those in which the callings to be licensed are classified according to their receipts. But we do not see any reason why it does not apply to all methods of levying and collecting licenses. It does not fix the amount of the license-tax for that is settled by another part of the ordinance as one-third of one per cent of the gross receipts. Section 9 does, however, furnish a method by which the clerk is enabled to determine the amount which he must insert in the quarterly license. His duties are not, as appellant alleges, legislative but are purely ministerial. A similar question was before the court some years ago in a proceeding involving the construction of an ordinance in which it was made the duty of the clerk "in fixing the rate of license" for the several classes in the said ordinance mentioned to "grade the same according to his best information and knowledge," and he was empowered to require "any person to file his or her affidavit as to which class he or she may belong." Commenting upon the petitioner's assertion that this was an unauthorized delegation of power to the clerk, Mr. Justice McKee, speaking for the court, said *In re Guerrero,* 69 Cal. 97, [10 Pac. 267] : "The provisions, however, were only regulative of the mode of issuing and collecting the licenses imposed by the ordinance; the acts required of the

CLXIII Cal.—40

clerk and tax-collector were therefore ministerial; and while it is undoubtedly true that public powers and trusts devolved by law or charter upon the governing body of a municipality, to be exercised by it in such a manner as it shall judge best, cannot be delegated to another (*Birdsall* v. *Clark,* 73 N. Y. 73, [29 Am. Rep. 105]), yet the power to do acts which do not involve judgment or discretion, but are merely mechanical or ministerial, may be delegated. 'The true distinction,' observes the supreme court of Ohio, 'is between the delegation of power to make the law, which necessarily involves discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' (*Cincinnati W. & Z. R. Co.* v. *Commissioners of Clinton County,* 1 Ohio St. 88.)'' Appellant calls our attention to the fact that section 9 does not specify whether the sworn statement mentioned therein shall be filed five days before the expiration of the quarter or five days afterward. As the law does not require impossibilities this provision of course does not apply to the five days before the end of the quarter. The provision amounts merely to an exemption from arrest during the first five days of a new quarter—a period which may be reasonably necessary to a person or corporation doing a large business, for the preparation of a statement of the gross receipts of the previous quarter.

Appellant also makes the point that the ordinance is discriminative because under section 9 no tax is fixed for persons in their line of business who fail to file statements as that section imposes upon such persons the maximum tax prescribed and there is no maximum tax fixed for the distributors of gas and electricity, and a further complaint regarding the inequity of the ordinance is that a newly established gas or electric company would escape the payment of license for the first quarter of its existence because there is no minimum rate prescribed as a basis for the quarterly tax in the case of a gas or electric company. This does not render the ordinance void. While a slight advantage might thus be given to a new enterprise, there is nothing to prevent the governing body of a municipal corporation from bestowing such favor upon a starting business. As was said in *Ex parte Lemon,* 143 Cal.

563, [65 L. R. A. 946, 77 Pac. 546]: "We must, however, judge of the reasonableness of the ordinance in question by what we know of the general conditions, and not hold it void simply because in some exceptional case it may result in imposing unequal burdens. Absolute uniformity in the practical application of laws relating to taxation can never be attained, and to prohibit the enforcement of laws which fail to bring such absolute uniformity would be to abolish all taxation." No difficulty arises from the fact that section 9 does not apply to corporations like appellant in so far as it contemplates the collection of the maximum rate of license from persons or corporations failing to file the statement prescribed, because other sections provide for the collection of unpaid license-tax by civil process, the imposition of penalties for failure to make timely payment and the punishment of any one operating in violation of law without a license. Nor is the exception of manufacturers of acetylene gas and owners of gas wells from the burden of the ordinance inherently unreasonable. There is a vast difference between a business using the streets for pipes, wires, and conduits and one in which the product is delivered in portable tanks, and while the owner of a great number of gas wells, each producing a revenue less than fifty dollars a month might escape his just proportion of the license-tax, we must presume that the local legislative body, familiar with existing conditions, did not pass an unreasonable by-law and that the number of wells each producing less than fifty dollars per month and owned and operated by a single person or corporation is not considerable. As was said in *Ex parte Lemon,* 143 Cal. 563, [65 L. R. A. 946, 77 Pac. 546]: "The rule underlying the decisions upon the matter appears to be, that while the state, county, or city cannot discriminate in the imposition of those taxes between persons exercising the same privilege by imposing different taxes upon persons similarly situated, it may classify and tax occupations, grading the privilege tax by the amount of business done, that different methods of accomplishing this may be adopted, and that any classification reasonably designed to attain this object is within its power to make."

Plaintiff had a contract with the city of Los Angeles for furnishing electricity to light the streets of that city during the entire year 1910. The contention is made that the imposi-

tion of a license-tax impairs the obligation of this contract, because it imposes additional burdens upon one of the parties to said agreement. It appears from the complaint that plaintiff was paying a license-tax when its contract with the city was made and when the ordinance here considered was adopted by the city council. It is therefore evident that the contract was made in view of the city's right to impose a license-tax upon the business of plaintiff. So long as such tax is reasonable it is a legal imposition, and is a matter apart from the contract between the city and the Los Angeles Gas and Electric Corporation. The fact that the taxing power is a party to a contract does not impair the right to tax the business pursued by virtue of that contract. (*City of New Orleans* v. *Crappel,* 18 La. Ann. 725.) While a city may, by contract, deprive itself of the power to collect license-fees, that power is presumed to exist unless an unequivocal intention to the contrary appears from the terms of the agreement. (*City of St. Louis* v. *United Railways Co. et al.,* 210 U. S. 273, [52 L. Ed. 1054, 28 Sup. Ct. Rep. 630].)

The method of adoption of ordinance No. 20,000 (New Series), is attacked by appellant. After this ordinance was adopted by the council and approved by the mayor, a referendum petition, signed by the requisite number of electors was filed. This suspended the operation of the ordinance and the city council, on May 10, 1910, reconsidered it, and it was not entirely or at all repealed. Thereafter it and another ordinance were by ordinance No. 20,419 submitted to the people, at a special election held on June 30, 1910, and consolidated with other matters previously set for determination at a special election on that date. Ordinance No. 20,419 was approved on June 14, 1910, and therefore less than thirty days elapsed between its passage and its operation. Appellant insists that, consequently, it was illegal and void. Section 198b of the charter of the city of Los Angeles provides that "No ordinance passed by the city council, except when otherwise required by the general laws of the state or by the provisions of this charter, respecting street improvements, and except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a two-thirds vote of the council, shall go into effect before thirty days from the time of its final passage

and its approval by the mayor." This is followed by general language giving the right to a certain percentage of electors to file a referendum petition within thirty days. If the ordinance calling the special election and consolidating the referendum ordinance No. 20,000 (New Series), with other matters does not come within the exceptions mentioned in section 198b or is not by its very nature exempt from a referendum upon it, then there is no escape from appellant's theory that it was void. Respondent depends upon two propositions: 1. From the very nature of an ordinance calling an election it cannot be subject to the referendum provisions (citing such cases as *Carlson* v. *City of Helena*, 39 Mont. 113, [17 Ann. Cas. 1233, 102 Pac. 39]), and 2. Even if, generally speaking, an ordinance providing for a special election be subject to the referendum, the one before us was passed by a vote of more than two-thirds of the city council and contains a full statement of its urgency for the immediate preservation of the public peace, health, and safety. It is not necessary to discuss the first of these propositions because the second is correct. While "the mere declaration of the council in such a case that the ordinance is passed for the immediate preservation of the public health is neither conclusive nor yet sufficient" (*In re Hoffman*, 155 Cal. 120, [132 Am. St. Rep. 75, 99 Pac. 517]), the ordinance calling the special election contains more than the mere *dictum* of the council regarding its urgency, for in section 7 thereof we find this language: "That said ordinance No. 20,000 (New Series), is a penal ordinance regulating the carrying on of a large number of professions, trades, callings and occupations in the city of Los Angeles, and which affects the public peace, health and safety, and said ordinance also fixes and establishes the rates of licenses for all persons, firms or corporations engaged in carrying on such professions, trades, callings and occupations; that the said license-taxes so fixed and established, will form a large part of the revenues of the said city, and the collection thereof is necessary for the proper carrying on of the government of the said city." We can easily see how the early submission to vote of an ordinance affecting the conduct of a large number of professions, trades, and callings, and having a bearing on the public revenue, so important as that indicated by the above quotation, would be a matter affecting the public peace if not the public

health and safety; consequently we cannot, on the record before us, question the finding of the city council upon this subject.

It follows that the judgment from which the appeal is taken must be affirmed, and it is so ordered.

Lorigan, J., and Henshaw, J., concurred.